UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| QUANTIFIED OPERATIONS LIMITED, et al., | : | |
| | : | |
| Plaintiffs, | : | Before: Richard K. Eaton, Judge |
| | : | |
| v. | : | Consol. Court No. 22-00178 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

# ORDER

In this case, Consolidated Plaintiffs Quantified Operations Limited and WobbleWorks (HK) Limited ("Plaintiffs") challenge U.S. Customs and Border Protection's ("Customs") classification of 3Doodler Pen sets[1] under the Harmonized Tariff Schedule of the United States ("HTSUS"). Before the court is Plaintiffs' motion to compel discovery of unredacted versions of Customs officials' internal emails, numbered GOV000091-000102.[2] Pls.' Mot. at 1, ECF No. 31. The court denies Plaintiffs' motion because the redacted information is (1) not relevant to Plaintiffs' classification claims; and (2) it is protected by the deliberative process privilege.

---

[1] "The 3D Pen is a hand-held 'printing' pen, which operates by extruding a heated plastic strand . . . which cools into a solid thread in the air, allowing for the creation of whimsical and playful three-dimensional objects." Am. Consol. Compl. ¶ 20, ECF No. 21.

[2] The document numbers refer to Defendant's privilege log. Pl.'s Ex. 3, ECF No. 31-3.

## BACKGROUND

By their complaint, Plaintiffs assert that Customs "incorrectly classified the 3D Pen [sets] under HTSUS heading 8477, as industrial 'machinery,' and claim the product is properly classified under HTSUS heading 9503 as 'other toys.'" Pls.' Mot. at 3 (citing Am. Consol. Compl. ¶¶ 36, 37). Alternatively, Plaintiffs propose classifying the 3D Pens under HTSUS heading 8516, as "other electrothermic appliances of a kind used for domestic purposes" or under HTSUS heading 8467, as "[t]ools for working in the hand, . . . with self-contained electric . . . motor." Pls.' Mot. at 3 (citing Am. Consol. Compl. ¶¶ 65, 67).

On December 18, 2013, Customs issued NY N248177 which classified the 3D Pen sets under HTSUS heading 8516 (as "other electrothermic appliances"). Pls.' Mot. at 4; Def.'s Resp. at 4, ECF No. 34. In March 2018, however, the World Customs Organization's Harmonized System Committee ("the Committee") decided to classify 3D Pens under HTSUS heading 8477, covering industrial "machinery."[3] Pls.' Mot. at 4; Def.'s Resp. at 3.

Following the Committee's 2018 decision, Customs requested reconsideration, arguing that "the pen[s] should be classified under heading 8467," i.e., as "[t]ools for working in the hand, . . . with self-contained electric . . . motor." Def.'s Resp. at 3; Pls.' Mot. at 4. The Committee rejected Customs' argument and continued to classify the pens under heading 8477." Def.'s Resp. at 3; Pls.' Mot. at 4.

Then, on October 7, 2019, Customs issued HQ H293445 which revoked its 2013 ruling and reclassified the pens under HTSUS heading 8477 ("industrial machinery"), in line with the Committee's decision. Pls.' Mot. at 4; Def.'s Resp. at 3-4. Plaintiffs later commenced this litigation

---

[3] Although the Committee's classifications are global in nature—whereas Customs' classifications are specific to the United States tariff system—the numbered headings refer to the same categories of goods in both systems. *See* Pls.' Mot. at 4 n.1.

to contest Customs' classification of their entries of 3D Pens under HTSUS heading 8477. Am. Consol. Compl. ¶ 1.

## DISCUSSION

The documents at the center of this discovery dispute—GOV000091-000102—are "email chains" that include discussions among Customs officials regarding the classification of the subject merchandise, as well as "discussion[s] of the Committee's initial March 2018 vote on the classification of a 3D printing pen and how Customs should proceed." Def.'s Resp. at 4; Pls.' Ex. 2, ECF No. 31-2. Portions of the email chains were redacted, including entire paragraphs and email subject lines. Pls.' Mot. at 5; Pls.' Ex. 2.

By their motion to compel, Plaintiffs seek the unredacted emails to support a claim under the Equal Access to Justice Act, or "EAJA," 28 U.S.C. § 2412. *See* Pls.' Mot. at 14; Pls.' Reply at 7, ECF No. 37 (asserting the redacted information is "crucial for Plaintiffs' claim under the EAJA"). In Plaintiffs' words, the redactions "appear highly relevant . . . as they may demonstrate that the government's classification position was not *substantially justified*, a key factor in EAJA claims." Pls.' Mot. at 14 (emphasis added); *see also* Pls.' Reply at 7 ("The withheld information is crucial for Plaintiffs' claim under the EAJA, as it is necessary to show that the government's position was not substantially justified.").

Defendant United States ("Defendant" or "the Government") opposes the motion arguing that the redacted information is irrelevant and that, in any event, it is protected by the deliberative process privilege. Def.'s Resp. at 5.

The court denies the motion based on relevance and the deliberative process privilege, as discussed below. Before discussing those grounds, however, the court explains why Plaintiffs' EAJA claim misses the mark.

The EAJA is a statute that, in certain circumstances, allows private litigants to collect fees in a "civil action brought by or against the United States." 28 U.S.C. § 2412(a)(1). Relevant to Plaintiffs' claim is section 2412(d):

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust.

*Id.* § 2412(d)(1)(A) (emphasis added). Importantly, proceedings under the EAJA, like other motions for costs and fees, are "collateral" to the main action. In other words, claims for fees are "independent proceeding[s] supplemental to the original proceeding." *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170 (1939)).

Plaintiffs apparently believe that, having asserted a claim for attorney's fees under the EAJA in their complaint, they may now seek discovery with respect to whether Customs' position, when classifying the 3D Pens, was "substantially justified." *See* Pls.' Mot. at 3-4 ("Plaintiffs [a] seek refund of excess duties paid, interest on refunded duties, and costs and reasonable attorney fees under EAJA."). Plaintiffs, however, are mistaken for a couple of reasons. First, any claim for fees at this stage of the litigation is premature. Indeed, the EAJA requires a party to file its fee application with the court "within 30 days of final judgment." 28 U.S.C. § 2412(d)(1)(B). The party making the application must have prevailed in the action. As this case is in the early stages of litigation, there is no winner yet. It is simply too soon for Plaintiffs to make a claim for fees. *See id.* § 2412(d)(1)(A); *see also Walsch v. Campbell St. Auto, Inc.*, 2021 WL 2371511, at *2 (W.D. Mo. June 9, 2021). At best, Plaintiffs have stated an intention to seek fees, should they prevail in this litigation.

Also, whether the Government's position was "substantially justified" under the EAJA is resolved by a court "on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B) ("Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought."). Courts have interpreted the statute's language, and its legislative history, to mean that "[n]o additional discovery of the government's position will be necessary, for EAJA petition purposes." *See, e.g.*, *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 160 n.8 (1990) (quoting H.R. Rep. No. 99–120, at 13 (1985)); *Blaylock Elec. v. NLRB*, 121 F.3d 1230, 1233 n.1 (9th Cir. 1997) ("Congress did not intend an EAJA fees determination to involve additional evidentiary proceedings or additional discovery of agency files, solely for EAJA purposes." (internal quotations omitted)); *Gardner v. Colvin*, 2013 WL 12210169, at *2 (D. Or. Dec. 31, 2013) (denying a motion to compel based on "unequivocal" governing law disallowing discovery into the substantial justification prong of an EAJA claim for fees); *United States v. Capener*, 608 F.3d 392, 405 (9th Cir. 2010) (quoting *United States v. Certain Real Estate Property Located at 4880 S.E. Dixie Highway*, 838 F.2d 1558, 1564-65 (11th Cir. 1988).

Thus, the law simply does not permit the type of discovery Plaintiffs seek, regardless of their ability to assert an intention to claim fees at the current stage of litigation.

As to the merits of Plaintiffs' motion to compel itself, the court denies the motion because the sought material is no more relevant to an eventual EAJA proceeding than it is to Plaintiffs' classification claims. Under the rules of this Court, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." USCIT R. 26(b)(1). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would

be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.

In classification cases, like the one brought by Plaintiffs, there is only one question of fact: "determin[ing] what the [subject] merchandise at issue is." *See Quaker Pet Grp., LLC v. United States*, 42 CIT __, __, 287 F. Supp. 3d 1348 (2018). Once this question of fact has been answered, a customs lawsuit has only one other question and that is a question of law. That is, the court must "determine[] the proper classification under which [the merchandise] falls." *See id.* at __, 287 F. Supp. 3d at 1354 (quoting *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1366 (Fed. Cir. 1998)). This question is a question of law.

The redacted information here is thus only relevant—and therefore potentially discoverable—if it makes a particular classification of the merchandise "more or less probable than it would be without the evidence." FED. R. EVID. 401. Plaintiffs do not argue that the unredacted information pertains to what the subject merchandise is. Nor could they, for the information they seek consists of discussions within Customs regarding how the agency should respond to the Committee's 2018 decision and how to properly classify the 3D Pen sets. *See* Kipel Decl. at 2-3, ECF No. 34-2.

The question of how Customs decides to classify a product at entry is not relevant to what the product actually is. It simply amounts to the Government's position on the issue. In fact, because this Court reviews classification decisions de novo, Customs sometimes changes its classification position when a case arrives before the Court. *See ME Global, Inc. v. United States*, 47 CIT __, __, 633 F. Supp. 3d 1349, 1357 (2023) ("While Customs classified, at entry, the subject rods under HTSUS heading 7228.30.80 . . . it now argues that the rods should be classified under HTSUS chapter 72, heading 7228, subheading 7228.40.00 . . . .").

Moreover, were Plaintiffs to prevail on their claim as to the proper classification of their merchandise, the information they seek would not bear on whether Customs' classification was substantially justified. That finding would not depend on how Customs arrived at its classification. Because the finding must be based on the record developed in the classification case itself, evidence relating to how Customs reached its classification would be no more relevant in any application for attorney's fees than to the case of whether or not the classification is correct. The redacted information therefore has no relevance to this case.

The information Plaintiffs seek is also protected by the deliberative process privilege. *Ford Motor Co. v. United States*, 94 Fed. Cl. 211, 217 (2010) ("The deliberative process privilege, a subcategory of the executive privilege, protects intra-governmental pre-decisional documents 'reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions are formulated.'" (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975))). The redacted information is pre-decisional, i.e., the information "address[es] matters antecedent to the adoption of agency policy," because the emails numbered GOV000091-000102 were created before Customs issued HQ H293445 in October 2019. *Id.* (citation omitted); *see* Pls.' Ex. 2. And the redacted information is deliberative because it "reflect[s] the give-and-take consultative process." *Ford Motor Co.*, 94 Fed. Cl. at 217.

The emails "discuss[] the publication of the 61st Harmonized System Committee's decisions," how those decisions "may affect Customs rulings, . . . recommendations on how [Customs] may respond to the decisions," and "recommendations, thoughts, advice, and analysis regarding" the classification of 3D pen sets such as those involved in this case. Kipel Decl. at 2-3. Indeed, the language preceding redacted portions of the emails evinces internal deliberations, i.e., phrases such as "[m]y initial take is that," "just off the top of my head," "[f]rom my

understanding," "[f]irst and foremost, I do think," and "[m]y somewhat kneejerk reaction is." Pls.' Ex. 2 (quoting GOV000091-000096). The redacted information thus falls squarely within the deliberative process privilege.

The court need not spend much time on Plaintiffs' challenge to the way in which the Government invoked the privilege. Pls.' Mot. at 8-10. To invoke the deliberative process privilege "(1) the department head having control of the requested information or his or her designated subordinate must make a formal claim (2) by way of affidavit sufficiently describing the information for which the agency is claiming the privilege and based on his or her actual consideration thereof." *See Meyer Corp., U.S. v. United States*, 2016 WL 721949, at *2 (Ct. Int'l Trade Feb. 23, 2016). In response to Plaintiffs' motion, Defendant attached a delegation of authority from the Senior Official Performing Duties of Commissioner of Customs to the Executive Director of Regulations and Rulings at Customs. Delegation, ECF No. 34-3. Defendant also attached the declaration of Alice Kipel, the current Executive Director of Regulations and Rulings, where Ms. Kipel formally invoked the privilege and described the contents of the redactions. *See* Kipel Decl.

Plaintiffs take issue with the manner in which the Government provided Ms. Kipel's declaration and the delegation of authority, because they were provided in response to Plaintiffs' motion to compel and not when the Government first withheld the redacted information. Pls.' Mot. at 8; Pls.' Reply at 4. Both parties, however, have cited to instances where courts permitted (and sometimes ordered) the provision of these documents in response to a motion to compel. *See, e.g.*, *Proctor v. Gambel*, 2009 WL 5219726, at *9 (S.D. Ohio Dec. 31, 2009); *United States v. Greenlight Organic, Inc.*, 41 CIT __, __, 279 F. Supp. 3d 1317, 1321 (2017); *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 278 (S.D.N.Y 2013) ("Subsequent Court

of Claims cases have approved the production of the [affidavits] in response to a motion to compel."); *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (holding that "the White House [did not] have an obligation to formally invoke [the privilege] in advance of the motion to compel"); *see also Huntleigh USA Corp. v. United States*, 71 Fed. Cl. 726, 727 (2006) ("[T]he procedural requirements for asserting the privilege 'are satisfied through the production of a declaration . . . in response to a motion to compel.'" (quoting *Abramson v. United States*, 39 Fed. Cl. 290, 294 n.3 (1997))).

The court is therefore satisfied that the delegation of authority, and Ms. Kipel's declaration, meet the procedural requirements for the invocation of the deliberative process privilege.

## CONCLUSION AND ORDER

For the reasons discussed above, it is hereby

**ORDERED** that Plaintiffs' motion to compel, ECF No. 31, is denied.

                                                   /s/ Richard K. Eaton
                                                            Judge

Dated: May 6, 2025
       New York, New York